The afternoon docket is 516-0063, People v. Marlon Coleman. I think the doctor has Marion, but it's Marlon. That's correct. Okay, thank you. You may proceed. May it please the court. My name is Jason Jordan. I'm from the Appellate Defender's Office in Springfield, and I represent, as you said, Your Honor, Marlon Coleman. The trial court in this case gave a definition of reasonable doubt. It was confusing, inaccurate, and it muddied the waters on the burden of proof. I'd like to start simply by reading just some of how the trial court defined it. Quote, it's not beyond any doubt, but it's within the human realm beyond a reasonable doubt. End quote. There are two questions in this case. First, did the trial court give a definition of reasonable doubt? And two, was that definition defective? First, yes, the trial court gave a definition of reasonable doubt. The State denies this, but the court, the trial court itself acknowledged it when it said, after all its comments, given that explanation, do you think you can, you understand it better? So the court acknowledged that it had explained it in such a way to try to bring understanding. That's the textbook definition of defining something. But didn't the court also say before that, if you back it up, that there is no definition of reasonable doubt and I can't give you a definition? I mean, didn't he give it and take it away? So, yes, Your Honor. He said, he started off by, the trial court started off by saying, you won't get a definition of reasonable doubt in the course of this trial. That is a, it's, the Supreme Court has indicated we do not define it. Then he goes on, he says, but given, I can say this. And then he went on to say a whole bunch of things, such as that it's within the human realm beyond reasonable doubt. And then he ended with, given that explanation, do you think you can understand it better? So the trial court admitted it had explained the definition of reasonable doubt to try to bring understanding. It also compared the civil and criminal standards. It said it was not beyond all doubt or any doubt. A couple things about that, that was a little bit inaccurate as well. It called the civil standard probable cause, and it said the criminal standard is more than that. Well, the civil standard is not probable cause. It said it's not beyond any doubt or all doubt. Well, the trial court didn't modify that, so that could have been incorrect if the jurors heard that it was not beyond any reasonable doubt or any or all reasonable doubt, because it was beyond any reasonable doubt or all reasonable doubt. And also, the court said it's within the human realm. So the court did give a definition. The other question, was it defective? I think it's important to keep the standard here in mind. The standard is all the instructions taken as a whole, did they create a reasonable likelihood that the jury understood those instructions as allowing conviction under something less than the burden of proof beyond a reasonable doubt? A reasonable likelihood. When human nature was invoked by the trial court, it's reasonable that one of those jurors thought, hmm, yeah, it's high, but I'm merely human. I'm only human. It was a license for the jury to make a mistake. The word human is a synonym for imperfection or being prone to error. And so by invoking human nature, it opened the door for the jurors to essentially convict on something less than our burden of proof beyond reasonable doubt. Why? Why do you make that statement? I mean, I read the statement, but I don't understand it. Me neither. I don't understand your argument. My argument. Error is human, and how you get from that statement to less than reasonable doubt, I'm confused. As to how you make that jump. Well, if you look at the structure of the trial court's comments... They were really confusing. They were very confusing. And basically, what the trial court said is, yes, the standard is high, but it's within the human realm. Everything's within the human realm. Every decision we make is within the human realm. Even the decision that you have to prove a defendant guilty beyond a reasonable doubt is within the human realm, isn't it? Well, it goes without saying that the jurors are humans. Yes, Your Honor. And does the criminal instruction... I haven't read it recently. I apologize. But does it say that you are to use your common sense and not leave your common sense at the courthouse steps kind of thing? Is there a general instruction in that as well? Well, we do not define reasonable doubt in Illinois. No, no, no. Isn't there a 101 instruction that's a general instruction to the veneerman that says that? You know, you don't put aside your normal experiences in life. Isn't that something? Right, that sounds familiar. I'm not going to comment on that at this moment. Yes, Your Honor. Okay. So when you... But there's phrases like, it's a term of art, Your Honor. I'm only human. Right. Nobody's perfect. Right. And that's a universal truth. So when the trial court said it's within the human realm, the question is, did it create a reasonable likelihood that some of those jurors understood the burden to be lower? It's a very low burden that Mr. Coleman has to show. It's not an abuse of discretion. It's not against the manifest weight of the evidence. It's just a reasonable likelihood. That phrase, human, I'm only human, nobody's perfect, is used all the time. And what it conveys is an excuse to make mistakes or an understanding that mistakes will be made. Yes, Your Honor. I'm just wondering how we make that jump. Why does it convey that understanding? Who says that? Whose authority do you have that says that? Or is that just something you are making up as the obvious? Well, I did not make it up, and I put several cases in the briefing, Your Honor, that talk about that. And they use the word human to convey the universal truth that we all make mistakes. That I understand. To err is human. Yes. I mean, that's who we are. But the judge didn't say to err is human. You added that. So I don't understand how you're adding the phrase that Alexander Pope coined, how that reasoning, how that means that the judge made an error by just simply using the word human, which is what a juror's job is as a jury. So we're trying to get a grasp on what your argument is. Because we don't see, I mean, I don't see how just saying the word human suddenly gets you to humans are mistake-prone. Thank you. Well, if I said I'm only human, that means that humans are mistake-prone. And it's been used for centuries to convey that. Well, let me just take it a step further. You're suggesting that by using that terminology that it instructs a juror that they don't have to be perfect, that they can be human and have a mistake. I don't know that it instructs anyone to be mistaken. I think it just reinforces that they're not divine and that they're not going to be perfect at rendering a decision, but that you're human, figure this out, do it the way that I'm telling you, and everything will be fine. As opposed to what you're suggesting in terms of just by mentioning that, that gave permission to one or more jurors to get it wrong and not feel bad about it. Because that's the gist of your argument, is that by using that terminology, the jurors were given a lesser burden, they could make a mistake and not feel bad about it. Is that not correct? Right, right. Your Honor, what the trial court did was it said the burden is high. The burden is high, but whatever's going to come after that is playing with fire. That's how the Seventh Circuit talks about defining reasonable doubts, playing with fire. The judge actually said to the jury that not only is the burden high, it's the highest burden we have. It's not that we have a high burden. It's the highest burden we have, higher than any other standard that you'll ever be asked to decide on. So, I mean, it wasn't, I don't see it the way, I'm trying to, I just don't see it. The court said it's high, but what's going to follow? It's not that high. It's been lowered because he invoked the human nature of the jurors themselves. And he did everything, I can see my, is that one of the other people? Don't worry, she'll let you know. I can see that, also there was other things that were just inaccurate about it. So he did say it was our highest burden, but he also said that the civil, it's higher than the civil standard, which is probable cause. It is higher than probable cause. Yes, it is, but it's higher than probable, it's much higher than probable cause, Your Honor. And so the whole definition was confusing and inaccurate. And I'd like to put this court once again to the standard, a reasonable likelihood that some of the jurors understood it is such a way to lower the burden of proof. This is a very important error. They were asked if they understood at the end of the trial, they were asked if they understood, I'd say at the end of the trial, I'm not sure exactly what part of the trial they were asked, I think maybe by the state. They were asked, do you understand what your burden is, can you, you know, agree to this, so forth and so on. They all said yes. So, I mean, doesn't that remove some doubt as to which jurors may have been confused or thinking it was less? I'm sorry, Your Honor, if I could answer that question, please. If you don't mind. Go ahead, go ahead. No, it didn't, because once they were given that faulty definition, all of them agreeing to follow that faulty definition just reinforced the error, Your Honor. And so they were never given a correct definition. It was lowered and it was enforced. And also we know that something did change after they gave the definition, because the trial court asked him, given that explanation, do you understand it better, and that person responded, yes. Something changed. That person never made it on the jury. That's correct. So you're saying that that tainted the entire veneerment? Yes, yes, Your Honor. Okay. Going back to a question I asked before, I went to the Illinois Supreme Court website, and I'm looking at instruction 1.01 of the criminal instructions, and it says, as I thought it did, you should consider all the evidence in the light of your own observations and experience in life. Now, don't you think by, and that exists in the civil as well, but when the court says use your own experience in life, are we telling people to be human? Not in this context. Not what the trial court did here by saying it's a high standard, but I meant to use the word human. In that context, it lowered it. It was a juxtaposition between a high standard and something else. And there the word human lowered the standard. It gave them an excuse to make an error. Okay. And just so I am clear, this is the only point of error that you're arguing on behalf of this defendant? Yes, Your Honor. Perfect. Okay. Thank you. You'll have a chance at rebuttal, even though we went over that was our fault. The State will have an extra few minutes should you need it. Thank you, Your Honor. The State has argued in its brief that, first, there was no error. Could you just state your name for the record? I'm sorry. May it please the Court? Counsel. My name is Sharon Shanahan, and I represent the people of the State of Illinois. The State has argued that there was no error in this case, or even if there was, it certainly hasn't met the standard for plain error. And I think the Court has recognized several of the problems in the defendant's argument. The State, in its answer brief, boiled down the defendant's argument to this, that the trial court said the human realm, and all potential jurors hearing the word human would think two errors human. And two errors human means it's okay to make mistakes and there's no need to worry about reaching a mistaken result. And this means that the potential jurors were instructed with a standard lower than beyond a reasonable doubt. In the reply brief, the defendant basically agreed with that. He said his argument boiled down to this. And here I'm quoting. The burden of proof was lowered because the adjective human is a synonym for imperfection or error. He goes on to say the realm of human nature is one of imperfection and mistakes. And I think that's kind of a cynical worldview. And I would note that the very same dictionary that the defendant uses to define human also defines human as showing the better qualities of humankind. It gives us examples, kindness, honesty, public spirit, good manners, and civic pride. So to make this jump from the word human to imperfection and mistakes and error is a jump I can't make. We could just as easily assume that the trial court was talking about the realm of kindness, the realm of civic pride, the realm of good manners. There is no logic in going from the word human through this phrase to err is human, which, Justice Moore, as you point out, the judge did not say to err is human. The judge did not say, hey, I'm only human.  And in his brief and here in oral argument, the defendant said, well, I cited some cases that say that. Those cases cited the very well-known phrase to err is human. And the judge did not say to err is human to just say, oh, well, look at these cases that use a quotation that all of us are familiar with. Does it mean that because a trial judge uses the word human when he says the human realm of reasonable doubt, does it mean that he was in any way directing the jury towards this particularly negative aspect of being human? So can you address whether or not, you know, assuming that there is a plain error, is there a closely balanced case? This is second-pronged plain error. So it doesn't have to be. If it's err. I'm asking you to elaborate on that. If it's err, no, let me very clearly, let me clarify something. If it is, let me find my, if it's defective err. If it is err, as the Supreme Court said in, the United States Supreme Court said in Victor, if it is, if there's a reasonable likelihood that the veneer understood the instruction to allow conviction upon proof less than reasonable doubt, it goes on to say taken as a whole. So that means the comment where the judge said we do not define it. I can't define it for you. It's not beyond all doubt. It's a much higher standard beyond a reasonable doubt. I mean, you look at all of those things in addition to the phrase that the defendant complains of. So you have to see when you look taken as a whole, do the instructions correctly convey the concept of reasonable doubt to the jury? I think that as far as plain error goes, when you look at the Illinois Supreme Court case of people versus downs, any jury instruction defining reasonable doubt violates the defendant's due process rights only if there is a reasonable likelihood that the veneer understood the instruction to allow conviction upon proof less than beyond reasonable doubt. And Victor goes on to say that this is something that the defendant has to establish. And this court in people versus Burden said that the test is whether it has been effective to such a degree that it cannot confidently be said that the defendant's trial was fundamentally fair. And the second district in people versus Thompson said absent any concrete demonstration of error or confusion, jurors should be trusted to apply the beyond a reasonable doubt standard appropriately. We don't define reasonable doubt because they're words that everybody knows. We don't need the Oxford Dictionary to define reasonable. We don't need the Oxford Dictionary to define human. There is no indication that the defendant has not in any way carried his burden of establishing that these jurors were confused. And although I wouldn't say that the trial judge's comments to the potential jury pool were articulate, they certainly did in no way lower the burden of proof. You would agree he somewhat rambled. Well, I have to tell you that when I was talking to the deputy director about this case, he said, is it error if the judge says something that nobody understands? He was very pretty clear up to that. Yes, he was kind of rambling. Everything he started out with was great. But to say that, and again, you ask me, and defense counsel said this is his only claim, is that this phrase human realm is what led this jury astray. But interestingly enough, as I said, there's a general instruction, but also there are instructions at the end of the case that again say what they need to do. So all of that would be in the record. So we have one three or four-word phrase that the defendant claims said to a veneerman who didn't make it on to the jury, poisoned the entire pool. It's actually just one word when you get down to it. It's the word human. Because he doesn't discuss the word realm. He talks about the word human. He goes human, through error is human, everybody thinks that it's okay to make mistakes, that's lower the burden of proof. That's the argument. I don't buy it. Okay, thank you. May I please record? I'd like to clarify one thing. This is a structural error. So if this instruction was defective, it's automatically reversible. Harmless error analysis does not apply here. This is one of the few errors, a structural error. It's in the same category as denying someone their public right to a trial or denying someone counsel. When you lower the burden of proof, it is a structural error, and that's what happened here. When the trial court said, yes, it's very, very, very high, but it's within the human realm, he essentially invited the jury to convict on something less than the burden of proof beyond reasonable doubt. One factor in this case that is interesting is there was two trials. At the first trial, no definition was given, and that jury was hung. At the second trial, where the defective definition was given, that jury came to convictions on all counts before it. That's interesting. Another fact here is what the juror that was asking the question's response. The trial judge asked, do you think you can understand it better, and she said yes. Something changed in her understanding. She can now understand it better. What changed? Is it reasonable that it stayed the same? Is there a reasonable likelihood that some of the jurors understood it themselves as lowering the burden of proof? Yes, there are many synonyms for human, as the state points out, the kindness one. The kindness one doesn't make sense. Yes, the burden is high, but you are kind. No. Yes, the burden is high, but it's within the human realm where everyone makes mistakes. The Supreme Court has said that this is the standard. In Jackson v. Virginia. Quote, at the same time, by pressing upon the fact finder the need to reach a subjective state of near certitude of the guilt. When the trial court here said yes, it's a high standard, but it's within the human realm, that's very different than a subjective state of near certitude of the guilt. And when you put those two phrases together, it shows how the universal truth, that all humans make mistakes, universally acknowledged in the English language for centuries. How it operated here to cover the meaning of beyond a reasonable doubt, and it lowered the burden of proof. Therefore, Mr. Coleman was given a fundamentally unfair trial. His trial was an unreliable vehicle for determining guilt and innocence. The two separate verdicts in the trial demonstrate that. And this is structural error. It's automatically reversible. Are there any other questions, Your Honors? Okay, thank you so much for your argument. Thank you for your time, Your Honor. Thank you both, counsel. This matter will be taken under advisement, and a disposition will assume due course.